# Exhibit E

Internet2 Peer to Peer Working Group - P2P WG

http://p2p.internet2.edu/apps_list.html

INTERNET®

April 23, 2008 | Internet2 Home > P2P-WG Home

Site Index | Internet2 Searchlight |

Membership | Communities | Services | Projects | Tools | Events | Newsroom | About

PEER TO PEER
WORKING GROUP
> About Us
> Contact

RESOURCES
> Applications
> Security
> Resource
  Management
> Information
  Management

# Peer-to-Peer Applications

Here is a list of P2P Applications for the research and education communities. This is an initial attempt to collect and identify such applications. So, please use the form below to submit any P2P applications we may have missed in this list.

## Research Applications

- Intel® Philanthropic Peer-to-Peer Program [http://www.intel.com/cure/] -- "Intel's Philanthropic peer-to-peer program links millions of PCs to create a computing resource for researchers in a wide-variety of fields. For example, Leland Stanford Junior University is focusing on protein folding and related diseases such as Alzheimer's, ALS and Parkinson's."
- SETI@home [http://www.seti.org/science/setiathome.html] -- "The SETI@home project links and uses donated computer processing capacity to analyze data collected from a radio telescope located in Puerto Rico."
- Worldwide Lexicon Project [http://pico.weblogger.com/] -- "The worldwide lexicon project is an open source initiative to create a multilingual dictionary service for the Internet, and to create a simple, standardized protocol for talking to dictionary, encyclopedia and translation servers throughout the web. Similar to the SETI@Home project. While SETI@Home taps the idle CPUs of millions of personal computers, the worldwide lexicon enlists the help of internet users who are logged in, but not busy. Think of this as distributed human computation."

## Educational Applications

- eduCommons [http://www.educommons.org/]-- The eduCommons is an open system for creating, sharing, and reusing educational content and discourse to support people's learning. [more info]
- Edutella [http://edutella.jxta.org/] -- "Edutella is a peer-to-peer service for the exchange of educational metadata. Edutella lives on top of the Semantic Web framework as a distributed query and search service."

## General Applications

- Chord Project [http://www.pdos.lcs.mit.edu/chord/] -- "The Chord project aims to build scalable, robust distributed systems using peer-to-peer ideas."
- Groove Networks [http://www.groove.net] -- "Groove Networks has developed software tools that provide multiple users realtime access to information simultaneously. Developed by the creator of Lotus Notes, Groove has strong backing from a variety of partners including Microsoft."
- JXTA [http://wwws.sun.com/software/jxta/] -- "Sun Microsystems Project JXTA is a set of peer-to-peer protocols that allows any connected device (cell phone to PDA, PC to server) to communicate and collaborate. Potential scenarios for JXTA include allowing multiple machines that are not part of the same network access the same files."
- LOCKSS [http://lockss.stanford.edu/] -- "Stanford University Library Systems LOCKSS (Lots of Copies Keeps Content Safe) project aims to create a "low-cost, persistent digital caches" of e-journal content. LOCKSS has active support of the librarian and

- publishing community and is currently moving beyond beta testing stage."
- The Metadata3 Project [http://www.md3.org] -- "The Metadata3 project (also known as md3) is a peer-to-peer application that provides access to quality metadata, and the ability to translate between different metadata schemes at the semantic, structural, and/or syntactical layers. "
- OceanStore Project [http://oceanstore.cs.berkeley.edu/info/overview.html] -- "OceanStore is a global persistent data store designed to scale to billions of users. It provides a consistent, highly-available, and durable storage utility atop an infrastructure comprised of untrusted servers. Any computer can join the infrastructure, contributing storage or providing local user access in exchange for economic compensation."
- Piazza [http://data.cs.washington.edu/p2p/piazza/] -- "The vision of the Piazza peer data management system (PDMS) project is to provide "semantic mediation" between an environment of thousands of peers, each with its own schemas. Rather than requiring the use of a single, uniform, centralized mediated schema to share data between peers, Piazza allows peers to define semantic mappings between pairs of peers (or among small subsets of peers). In turn, transitive relationships among the schemas of the peers are exploited so the entire resources of the PDMS can be used."
- Publius [http://publius.cdt.org/] -- "Publius is a Web publishing system that is highly resistant to censorship and provides publishers with a high degree of anonymity."
- Tapestry [http://www.cs.berkeley.edu/~ravenben/tapestry/] -- "Tapestry is an overlay location and routing infrastructure that provides location-independent routing of messages directly to the closest copy of an object or service using only point-to-point links and without centralized resources."

Please send information of other peer-to-peer applications to George Brett ghb@internet2.edu

© 1996 - 2008 Internet2 - All rights reserved | **Terms of Use** | **Privacy** | **Contact Us**
1000 Oakbrook Drive, Suite 300, Ann Arbor MI 48104 | Phone: +1-734-913-4250

# Exhibit F

**iNews: From the Chief Information Officer**

# Online music, entertainment, and software copyright issues

October 14, 2004

*Jack McCredie, Chief Information Officer*

*Editor's note: This article was originally emailed as an open letter to all UC Berkeley students.*

I am writing to encourage all students interested in online music and other types of digital entertainment to explore, and to use, legal methods of acquiring these materials over the Internet. For example, we recently negotiated a heavily discounted price ($2/month, with free access until October 31, 2004, for undergraduates) with realRhapsody, a digital music provider (http://rts.berkeley.edu/rhapsody/) for Windows computer users. We also recommend Apple's iTunes service (http://www.apple.com/itunes/) for both Mac and Windows users. In addition, there are many other services available for you to explore, for example, mp3 (http://www.mp3.com/).

As users of the Internet, you need to be aware that the distribution, through file sharing programs, of copyrighted material for which you do not possess the permission of the owner is often a violation of both California and federal law. The fast Internet connections available at universities make higher education a target for enforcement actions. During the past academic year, for example, organizations representing copyright holders took successful legal actions against several individual students.

You should also be aware that UC Berkeley is subject to the compulsory release of information identifying our network users, in response to legal documents such as subpoenas. You expose yourself to the possibility of a claim for infringement, which has potentially severe civil and criminal sanctions, if you distribute or obtain music, games, videos, or software for which you do not have permission or a legal defense for its distribution.

Under the terms of the Digital Millennium Copyright Act (DMCA), UC Berkeley is required to act expeditiously upon receipt of a copyright infringement claim from a copyright holder. If you believe you have a legal right to such copyrighted material, and you receive such a claim, you must file a counter-notice under the rules of the DMCA. This counter-notice includes consent to suit brought by the entity or individual asserting ownership of the copyright. In some cases, "hackers" may be the cause of the problem, but the individual responsible for the computer must still remedy the situation immediately. It is very important to note that in accordance with the DMCA, repeat offenders may have their campus network access accounts terminated.

How can you protect yourself from this kind of legal or University policy action? First, take full advantage of the legal music programs that Berkeley is making available this year. The other obvious way to protect yourself is simple — don't distribute music, games, videos, or software for which you do not own the copyright or have permission to do so. Also, learn about the functionality of file sharing programs. For example, some file sharing programs will automatically take music from a legally purchased CD stored on your hard drive and distribute it anytime your computer is on — **without** your notice or permission. You may still have to prove you are not responsible for the distribution of that material. Turn off the outbound function of these programs. Information on how to do so may be found on the University of Chicago's Disabling Peer to Peer File Sharing web page (http://security.uchicago.edu/peer-to-peer/no_fileshare.shtml).

Finally, educate yourself on the law and politics of digital copyright. With implications for free speech and freedom of inquiry, digital copyright just might become one of the most important political issues of your generation. An excellent campus resource to learn more about these issues is the Copyright Information Resources website (http://socrates.berkeley.edu:7015/copyright/).

## Related links

- Digital Millennium Copyright Act (PDF document, http://www.copyright.gov/legislation/dmca.pdf).

- Rhapsody online digital music service (http://istpub.berkeley.edu:4201/bcc/Fall2004/rhapsodysvc.html), *BC&C*, Fall 2004.

- Copyright and universities in the news (http://istpub.berkeley.edu:4201/bcc/Spring2003/news.dmca.html), *BC&C*, Spring 2003.

[ iNews | Search | IST | UC Berkeley Computing | UC Berkeley ]

iNews: UC Berkeley information technology news channels
Copyright 2004, The Regents of the University of California

# Exhibit G

**What's the Policy?**

---

# Q: So, can I use file-sharing programs or not?

*Karen Eft, IST–AVCO*

File-sharing programs must not be used to commit violations of federal copyright law. Using KaZaa, Gnutella, Napster or similar programs to share "pirated" songs or other entertainment materials is punishable by severe penalties, even though the distributor makes no profit. See Oregon student convicted of software and music piracy, *iNews*, August 1999 (http://istpub.berkeley.edu:4201/bcc/News1999/gen.piracy.html).

Also, even when the files being shared are legal under copyright law, staff employees should not be sharing and playing them to provide personal entertainment. File-sharing activities require significant campus resources to support their use (including computers, network connectivity service, etc.), so they clearly exceed the limits on "incidental" personal use defined in the UC Electronic Communications Policy (http://www.ucop.edu/ucophome/policies/ec/). This is discussed in more detail in the Spring 2002 *BC&C* article Incidental personal use of the campus network.

Faculty or student use is a different matter, since there is not a ready distinction between activities related to their academic pursuits and their personal lives. However, while the use of specific programs in residence halls is not prohibited, residence hall students' use of campus bandwidth is "capped" in order to provide as much network access bandwidth as the campus can afford, without denying services to the rest of the community. The detrimental impact of file-sharing programs on campus network performance is discussed in the April-May 2000 *BC&C* article Why UC Berkeley needs to manage campus network growth and usage.

So campus departments may sponsor the use of online file-sharing programs by staff employees who are performing work-related assignments. For example, CS department faculty, students, and staff are working on OceanStore (http://oceanstore.cs.berkeley.edu/), a distributed file storage system for "global-scale persistent storage". Also see What is P2P and why should you be mindful of it? in the Summer 2001 *BC&C*.

So, while file-sharing programs can be very valuable tools for bona fide campus activities, users must be aware of the appropriateness of the use and the impact on campus network resources. Campus departments may direct questions about the allowable use of campus electronic communication resources to policy@uclink.berkeley.edu.

---

[ Next Article | Contents | Search BC&C | BC&C Main Menu | IST | UC Berkeley ]

Copyright 2002, The Regents of the University of California

# Exhibit H

FD-302 (Rev. 10-6-95)

-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    07/16/2007

    ROBERT HIRAMOTO, born 12/13/1970, Manager of Information Services and Technology (IST)/Network Administration at the Institute for Research on Labor and Employment (IRLE), formerly the Institute of Industrial Relations, 2521 Channing Way, Berkeley, California (CA), ~~work telephone number 510-642-3900, cellular telephone number 510-806-7814~~ was telephonically contacted. After being advised of the identity of the interviewing agents and purpose of the interview, HIRAMOTO voluntarily provided the following information:

    Hiramoto normally worked on Fridays and believes he was at work Friday, October 27, 2006. His office is located on the first floor in room 117. Although he has a master key to the offices in the IRLE building, he very rarely accessed the locked offices of the California Public Employee Relations (CPER) division on the second floor. He does not recall accessing any locked CPER offices on October 27, 2006.

    With the exception of Borgerson, all CPER employees have desktop computers. Borgerson had a laptop computer presumably because CPER did not want to spend money on another desktop computer. All of the desktop computers are connected to their own individually assigned internet jacks. Employees are not supposed to disconnect their desktop internet cord because their computer IP addresses are assigned to match each assigned internet jack. Borgerson's laptop computer also had an assigned internet jack he was to use in his office.

    Hiramoto did not know Borgerson to have had a docking station for his laptop computer and docking stations would not be useful or beneficial for desktop computers. Hiramoto could not think of any legitimate benefit or reason for Borgerson to connect his laptop computer to the desktop computer of his office mate, Stefanie Kalmin.

    Hiramoto did see Borgerson use other CPER employees desktop computers presumably because they were better systems. Hiramoto believed Borgerson logged into these computers with his own ID and passphrase.

Investigation on   07/16/2007   at   Oakland, California   (telephonically)

File #   305- ~~~~

by   SA ~~~~

Date dictated ____

BORGERSON0144

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

# Exhibit I

1

| UNIVERSITY OF CALIFORNIA POLICE DEPARTMENT |
| :---: |
| One Sproul Hall |
| Berkeley, CA 94720 |
| (510) 642-6760 |
| **SUPPLEMENTAL REPORT** |

**OFFENSES:**

2 Counts  *311.3 PC – Sexual Exploitation of a Child, Knowingly Exchanging a Media that Depicts a Person Under the Age of 18 Engaged in an Act of Sexual Conduct*

2 Counts  *311.11PC – Possession of Child Pornography*

**SUSPECT:**

BORGERSON, Eric Michael          DOB: 11/29/1965      CDL: B4810388
2625 School Street, Oakland, CA 94602
(510) 535-9448 Home

**CONTACTS:**

Gene Murray Faurie Jr.    SS: ███    DOB: ███         CDL: ███
███ Oakland, CA 94602
███

Carol Brosnahan, Superior Court Judge
Wiley Manual Courthouse, 661 Washington Street, Oakland, CA 94607

**EVIDENCE:**

E-45-1    DVD Containing Interview with BORGERSON conducted at UCPD

**NARRATIVE:**

On 10/30/06, I was assigned to investigate this case.  I examined four copies of the screen shots from BORGERSON's computer and I saw that he was logged onto his computer on 10/27/06 at 1604 hours.  The next screen showed file names in Windows, and the next was a screen shot from BearShare Pro 5.2.1 which contained files with words such as "bondage 11yo...Carol 6yo child-cum...BabyJ mouthful pthc kid porn cum suck dick kiddy...BabyJ-Ass-Fuck..."  The last copy of the screenshot contained five thumbnail photographs, one of which

| Reporting Detective: ███ | Date: 10/30/06 |
| :--- | :--- |
| Reviewed By: ███ | Date: |
| Copies To: ███ | |

BORGERSON0024

> **UNIVERSITY OF CALIFORNIA POLICE DEPARTMENT**
> **One Sproul Hall**
> **Berkeley, CA 94720**
> **(510) 642-6760**
>
> **SUPPLEMENTAL REPORT** ▬▬▬▬▬▬

showed an obvious child, naked, handling a man's penis. That photograph was titled "showersuck.mpg". Another thumbnail contained a photograph of another obvious child orally copulating a man. That thumbnail was titled "blow.mpg".

Detective Bauer went to BORGERSON's residence at 2625 School Street in Oakland at approximately 0745 hours to obtain a physical description of the property. At 0824 hours, Detective Bauer saw BORGERSON come out of his residence while carrying a backpack large enough to conceal a laptop computer. He appeared to be walking towards the bus stop. I asked the detective to head back to BORGERSON's office to wait for him.

At approximately 0915 hours, Detective Bauer returned to UCPD and informed me that BORGERSON was at the station voluntarily to talk about a security breech on his computer. I met with BORGERSON in the interview room where I introduced myself and told him that he was not under arrest. I also showed him that the doors leading outside were unlocked, that he could walk out at anytime and again, reiterated that he was not under arrest.

During the recorded interview (E-45-1), BORGERSON considered himself as being savvy with computers. He knew that no one knew his login identification and pass code. He stated that on Friday, 10/27/06, he began downloading music and videos onto his University issued laptop computer through BearShare. He remembered downloading songs by Kelly Rushall and Seasing and nothing else. He was quick to clarify that a problem with BearShare was that debris often came in while trying to download music and video. He explained that he considered pornography of all types as debris or noise that came with his downloads. He stated the he had seen pornography of every kind including sex with animals. He reiterated that there was a lot of pornography on BearShare, a lot of it. BORGERSON went on to explain that he had files of downloaded software or debris that the police might be concerned about, but he didn't mean to download them. He offered to clean his computer of the items of concern.

I asked BORGERSON specifically about having child pornography on his computer and he stated that, "There's just some junk on there that I accidentally downloaded and I suppose I

| Reporting Detective: ▬▬▬▬▬ | Date: 10/30/06 |
|---|---|
| Reviewed By: | Date: |
| Copies To: | |

3

**UNIVERSITY OF CALIFORNIA POLICE DEPARTMENT**
**One Sproul Hall**
**Berkeley, CA 94720**
**(510) 642-6760**

**SUPPLEMENTAL REPORT**

haven't deleted it." I then asked why I didn't see any music being downloaded onto his computer on Friday, but instead I saw child porn and he replied, "There could have been stuff with it on Friday, I don't know...I'm interested in people's fantasy thoughts." BORGERSON then admitted to downloading videos, and being "careless about it, I guess there was some porn, gay porn." I asked him if the videos included child pornography and he stated, "Not intentionally, it comes up sometimes and I mistakenly click on it." I asked if he read the titles because some of the titles that I had seen on his computer were very graphic and descriptive, and he stated, "Yes." I asked him why he would open a file with a title of "9 year old boy giving dad a blowjob", and he said that he didn't think it would be real. He believed that it would not have been a real child actor in the movie clip, but just adults in a scenario. I asked him why he would even click on a file with that type of title and he eventually explained that deviant sexual behavior intrigued him. He would have deleted the file if its contents shocked him. BORGERSON used BearShare for downloading music and videos of deviant adult sexual behavior.

Sergeant Alberts met with BORGERSON in the interview room and I left to observe their conversation on the closed circuit monitor. The sergeant kept it clear that she wanted to speak specifically about the child pornography on his computer. BORGERSON said that he was intrigued by bizarre people. He had been downloading pornography onto his work computer while at work because his domestic partner had a problem with pornography at home. BORGERSON believed that he first downloaded child pornography onto his work computer via BearShare about six months ago in May, and then again a few weeks ago. Last Friday, he downloaded files from "Esoterica" archive, but he didn't have time to look at them. He stated that he opened a file to see what was on it, and he saw that it was a video of a 5 year old girl with a man, although he was adamant that he didn't watch it, he remembered that the video was filmed indoors and in color. He then stated that he might have clicked on other files, likely less than five other ones to see the source of their contents.

BORGERSON stated that he had chatted with acquaintances in Yahoo Chat about child pornography because he liked to hear from people who thought about it. He said that he found "dads (who were) attracted to their kids" intriguing. He explained that it was the "forbiddeness

| Reporting Detective: | Date: 10/30/06 |
|---|---|
| Reviewed By: | Date: |
| Copies To: | |

BORGERSON0026

| UNIVERSITY OF CALIFORNIA POLICE DEPARTMENT |
|:---:|
| One Sproul Hall |
| Berkeley, CA 94720 |
| (510) 642-6760 |
| **SUPPLEMENTAL REPORT** |

of it that I find interesting." He had been interested in child pornography for a few months, and it was on a fantasy level that he assured the sergeant he would not act upon on a child. He said, "Please don't charge me."

Based on BORGERSON's statements and the two thumbnail pictures from BORGERSON's computer that I had seen, where two obvious young boys were performing sex acts on two obvious adult men, I ask that he be charged with two counts of 311.3 PC for downloading the two footages and two counts of 311.11 PC for possessing the images on his computer.

At 1202 hours, Judge Carol Brosnahan issued a search warrant directing UCPD to search BORGERSON's person, residence, vehicles, computers, and office. During the execution of the search warrant, a large amount of media storage devices including four computers were seized. We will be conducting computer forensic searches on the recovered items to obtain additional evidence.

**ATTACHMENT:**
- Alameda County Consolidated Arrest Report

NOTHING FURTHER.

| Reporting Detective: | | Date: 10/30/06 |
|---|---|---|
| Reviewed By: | | Date: |
| Copies To: | | |

# Exhibit J

1



**UNIVERSITY OF CALIFORNIA POLICE DEPARTMENT**
**One Sproul Hall**
**Berkeley, CA 94720-1199**
**(510) 642-6760**

**SUPPLEMENTAL REPORT**

**SUSPECT:** BORGERSON, Eric M. - See Police Report

**EVIDENCE:**

| ITEM | KIND OF ARTICLE | DESCRIPTION/COLOR | WHERE FOUND | WHERE STORED |
|------|-----------------|-------------------|-------------|--------------|
| 80E-1-1 | DVD-R | SERVICE OF SEARCH WARRANT | BERKELEY & OAKLAND | UCPD LOCKER #10 |

**NARRATIVE:**

On Mon 10/30/06 at approx. 0700 hours, Det. Jason COLLOM #45 briefed me on this case. At approx. 0824 hours, I drove to Eric BOGERSON'S residence at 2625 School St., Oakland, and saw him leave the residence. I telephoned Det. COLLOM with a description of the residence.

I met Eric BOGERSON as he came to work at 2521 Channing Way, Room 210, Berkeley. I told BOGERSON that the Information Technology Dept. had detected a security problem on his computer. I asked him if he would accompany me back to UCPD to discuss this. He agreed. I drove BOGERSON back to UCPD where he was interviewed by Det. COLLOM.

At approx. 1315 hours, I made a DVD-R (Item 80E-1-1) digital recording of entry and exit on a search warrant at 2521 Channing Way, Room 210, Berkeley. We left the scene at approx. 1333 hours.

At approx. 1359 hours, I continued the digital recording of entry and exit on a search warrant at 2625 School St., Oakland. We left the scene at approx. 1552 hours.

NOTHING FURTHER.

| Reporting Detective: ▮▮▮▮▮▮▮▮ | Date: 10/30/06 |
|---|---|
| Reviewed By: ▮▮ S·u | Date: 11-1-06 |
| Copies To: DA (3) | |

BORGERSON0028

# Exhibit K

## IN THE SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ALAMEDA, WILEY W. MANUEL COURTHOUSE

State of California

County of Alameda

**SEARCH WARRANT**

Register No.

Arrest No.

The People of the State of California, to:

**ANY PEACE OFFICER IN ALAMEDA COUNTY**
Proof of affidavit, having been made before me on this date by Detective Jason Collom, University of California Police Department in Berkeley, that there is probable and reasonable cause for the issuance of the search warrant, as set forth in the said affidavit.

*YOU ARE THEREFORE ORDERED to make search on and in the*
**Premises, structures, rooms, receptacles, outbuildings, computers, computer data storage medias, still and video cameras and their storage medias, vehicles and safes situated at:**

1)    The address of DMV record for Eric Michael Borgeson, with a date of birth of 11/29/1965, at 2625 School Street in Oakland, California. It is described as a white two-story single family home with blue trim. It had a brown asphalt shingle roof with a paved driveway on the south. Entry into the residence was via the door on the south side of the house along the driveway. The front door had a metal security screen. The numbers '2625' in black metal overhung above the doorway. '2625' in black letters were also painted on the curb in front of the house.

2)    The office of Eric Michael Borgerson at 2521 Channing Way in Berkeley, a University of California owned multi-level office building and specifically in the UC Institute of Industrial Relations where Borgerson is employed as an Assistant Editor.

3)    Any mailboxes and/or storage lockers, buildings belonging to Borgerson

4)    The person of Eric Michael Borgerson, male, white, 40 YOA, 5'10", 175lbs

For the following property and things consisting of:

1)    Child Pornography stored in any form including but not limited to electronic format as computer files, portable disk(s), hard-drives and thumb-drives, in print, on video, in film, on digital cameras
2)    Any printed or electronic documents, records, mail, papers, that tend to establish the transfer and sharing of Child Pornography
3)    Any printed or electronic documents, records, mail, papers, photographs or clothing that tend to show the identity of the other principals to this crime.
4)    Any documents, records, mail, papers, of keys that tend to establish Borgerson's residency at the address

And if you find the same or any part thereof, to bring it forthwith before me or this court, or to any other court in which the offense in respect to which the property or things taken is triable, or retain such property in your custody, subject to the order of this court pursuant to section 1536 of the Penal Code.

Time of Issuance: _12:00 PM_

_Signature of Magistrate_

Dated: _10/30/06_

(Seal)

Penal Code && 840, 1527, 1529, 1534, 1536, 1551, 1541

BORGERSON0030     2

## IN THE SUPERIOR COURT OF CALIFORNIA
### COUNTY OF ALAMEDA, WILEY W. MANUEL COURTHOUSE

State of California

County of Alameda

**AFFIDAVIT FOR SEARCH WARRANT**

Register No.

Arrest No.

Detective Jason Collom, University of California Police Department at Berkeley, being sworn, says: that there is probable and reasonable cause to believe, and I do believe, that there is now in the

**Premises, structures, rooms, receptacles, outbuildings, computers, computer data storage medias, still and video cameras and their storage medias, vehicles and safes situated at:**

the address of DMV record of Eric Michael Borgerson (DOB 11/29/1965), at 2625 School Street, Oakland, California. It is described as a white two-story single family home with blue trim. It had a brown asphalt shingle roof with a paved driveway on the south. Entry into the residence was via the door on the south side of the house along the driveway. The front door had a metal security screen. The numbers '2625' in black metal overhung above the doorway. '2625' in black letters were also painted on the curb in front of the house.

The office of Eric Michael Borgerson at 2521 Channing Way in Berkeley, a University of California owned multi-level office building and specifically in the UC Institute of Industrial Relations where Borgerson is employed.

Any mailboxes and/or storage lockers, buildings belonging to Borgerson

The person of Eric Michael Borgerson, male, white, 40 YOA, 5'10", 175lbs

**The following property and things consisting of:**

1)  Child Pornography stored in any form including but not limited to electronic format as computer files, portable disk(s), hard-drives and thumb-drives, in print, on video, in film, on digital cameras
2)  Any printed or electronic documents, records, mail, papers, that tend to establish the transfer and sharing of Child Pornography
3)  Any printed or electronic documents, records, mail, papers, photographs or clothing that tend to show the identity of the other principals to this crime.
4)  Any documents, records, mail, papers, ot keys that tend to establish Borgerson's residency at the address

Your affiant says that there is a probable and reasonable cause to believe and that he does believe that the said property constitutes: (check applicable boxes)

(   )    stolen or embezzled property and

1

( )    property or things used as the means of committing a felony and

( )    property or things in the possession of a person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he or she may have delivered it for the purpose of concealing it or preventing its being discovered and

( X )    property or things to be seized consist of any item or constitutes any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony

( X )    property or things to be seized consist of evidence which tends to show that sexual exploitation of a child, in violation of 311.3 PC, has occurred or is occurring.


***Your affiant says that the facts in support of the issuance of the search warrant are as follows:***

### Affiant Introduction

1    Your affiant is currently employed as a peace officer with the University of California Police Department on the Berkeley campus and has been working in that capacity since 1998. Your affiant has served as a Corporal of Police and a Field Training Officer in the Patrol Division. Your affiant has worked as a criminal investigator in the Alameda County Sexual Assault Felony Enforcement Task Force, where he investigated, tracked, and conducted surveillances on registered sex offenders including child molesters who possessed child pornography. Your affiant is now a Special Victims Detective assigned to the UCPD Criminal Investigations Bureau.

2    Your affiant has investigated over two dozens of sex registrant, rape, sexual abuse, child kidnapping, and child abuse cases, written search warrants and court orders and received formal and informal training including:

    -    POST Basic Academy, ACSO, 1050 hours in 1998
    -    California Sexual Assault Investigators Association Fall Training, 28 hours in 2001
    -    California Sexual Assault Investigators Association "Sexual Deviance", 8 hours in 2001
    -    California Sexual Assault Investigators Association Fall Training, 28 hours in 2002
    -    POST Field Training Officer Course, 40 hours in 2002
    -    POST ICI Identity Theft Investigation, 40 hours in 2004
    -    POST ICI Sexual Assault Investigation, 40 hours in 2004
    -    POST ICI Core Investigation, 85 hours in 2005
    -    POST ICI Child Abuse Investigation, 40 hours in 2005
    -    POST ICI Domestic Violence Investigation, 40 hours in 2005
    -    POST Search Warrants Course, 24 hours in 2005

BORGERSON0032

## Case Background

3    On 10/29/06 at 1443 hours, Officer Wykoff #48 took a report of suspected child pornography case from Robert Hiramoto (UCPD case #06-04946). Hiramoto told the officer that he was the IT Manager for the Institute of Industrial Relations, located at 2521 Channing Way. Hiramoto said that he was notified by the UCB campus networking group of a large amount of computer bandwidth being used on 10/27/06. Hiramoto was able to investigate the usage from his work computer and was able to tell that the bandwidth usage was caused by a file sharing program called BearShare, located on the university issued laptop computer of an employee, Eric Michael Borgerson. Hiramoto logged into Borgerson's university issued laptop computer user account and saw several video file icons on it with "inappropriate, adult sounding names", such as "9 year old rape," and a few others. Upon further investigation, Hiramoto said he was able to find a computer file directory which showed thumbnail images of video files which appeared to have children participating in sexual acts with adults. Hiramoto said he decided to not look any further from that point. Hiramoto took several "screen shots" of the images and shutdown Borgerson's university issued laptop computer remotely.

4    The officer asked Hiramoto if it was possible that someone else had put the images and movies onto Borgerson's university issued laptop computer. Hiramoto told Officer Wyckoff that the employees in his department have University issued computers and that they have to use their "Calnet ID and Passphrase" to logon. Hiramoto told me that the "Calnet ID and Passphrase" is specific to each employee and as far as he could tell, it was Borgerson who put the images and movies onto the computer.

5    Officer Wyckoff drove with Hiramoto to 2521 Channing Way in Berkeley to view the images he saved from Borgerson's university issued laptop computer. Hiramoto showed the officer four digital images of what he found on Borgerson's university issued laptop computer. Image #1 showed that Borgerson was logged into the computer at the time. Image #2 showed a computer directory on Borgerson's university issued laptop called "C:\WINDOWS\xerxes\system" that contained a video file called "g-rape.avi." Image #3 showed the BearShare files that were downloaded that included movie files such as "BEST ! 6yo and dad.mpg," "3Yo molested by hindu.mpg," "bondage 11yo.mpg," "Carol 6yo child-cum.mpg," and "+1s BabyJmouthfull pthc kid porn cum suck dick kiddy.mpg." Image #4 showed 5 "thumbnail" images from video files saved on Borgerson's university issued laptop computer. The movie files were called "bath.avi," "blow.mpg," "rpe.mpg," "showersuck.mpg," and "TMPbibcam – 13 boy's Dad sneaks in for mut…"

6    Officer Wyckoff had Hiramoto print the digital images and took them for evidence. Hiramoto then took the officer to Borgerson's university laptop computer and he seized it for evidence along with the power cable and a digital media card with card reader that Hiramoto said was not issued by his department and may have belonged to Bogerson.

BORGERSON0033

## Investigation

7    On 10/30/06, I was assigned to investigate this case. I examined four copies of the screen shots from Borgerson's computer and I saw that he was logged onto his computer on 10/27/06 at 1604 hours. The next screen showed file names in Windows, and the next was a screen shot from BearShare Pro 5.2.1 which contained files with words such as "bondage 11yo...Carol 6yo child-cum...BabyJ mouthful pthc kid porn cum suck dick kiddy...BabyJ-Ass-Fuck..." The last copy of the screenshot contained five thumbnail photographs, one of which showed an obvious child, naked, handling a man's penis. That photograph was titled "showersuck.mpg".

8    Detective Bauer went to 2625 School Street in Oakland at approximately 0800 hours and saw that it was a white two-story single family home with blue trim. It had a brown asphalt shingle roof with a paved driveway on the south. Entry into the residence was via the door on the south side of the house along the driveway. The front door had a metal security screen. The numbers '2625' in black metal overhung above the doorway. '2625' in black letters were also painted on the curb in front of the house. While observing the property at 0824 hours, Detective Bauer saw Borgerson come out of his residence wearing a Grey sweater, tan slacks, and black shoes. He was also carrying a blue backpack.

## Opinions and Conclusions

9    Based on my training, experience and conversations that I had with other law enforcement officers and reports that I have read, I am aware that the following characteristics are generally found in varying combinations in people who produce, trade, distribute or possess images and pictures of minors engaged in sexually explicit conduct:

10   These people view children as sexual objects. They receive gratification from sexually explicit images and pictures of minors. They collect sexually explicit images and pictures of minors, which they use for sexual gratification and fantasy. They rarely, if ever, dispose of sexually explicit images of minors because the images are treated as prized possessions. They store such images in many different formats including photographs, printouts, magazines, videotapes, and many other forms of digital media such as hard drives, diskettes, CDs and DVDs and other storage deveices. They store the images in many different locations such as their home, their vehicle, their work areas, and other areas under their control.

11   They use sexually explicit images and pictures of minors as a means of reliving fantasies or actual sexual encounters. They use the images as keepsakes and as a means of gaining acceptance, status, trust, and psychological support by exchanging, trading, or selling the images and pictures to other people with similar interests.

12   They may go to great lengths to conceal and protect from discovery their collection of sexually explicit images and pictures of minors. They may have

BORGERSON0034

passwords to access programs or control encryption written either in the vicinity of their computer, or on their person, for instance in their wallet or address book.

13      They maintain images and pictures of minors with whom they have had sexual contact. If such a person takes a picture of a minor, depicting the minor in the nude, there is a high probability that the minor was used to produce sexually explicit images.

14      I believe that the items listed in the search warrant will likely be found at Borgerson's residence at 2625 School Street, and/or in his University office, and/or his post office box, and/or his storage lockers, building and/or his person, and/or in the vehicles associated with him.

*Any item seized during the lawful service of this search warrant shall be disposed in accordance with law by the University of California Police Department upon adjudication of the case.*

*I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.*

*WHEREFORE, affiant prays that a search warrant be issued, based upon the above facts, for the seizure of said property or any part thereof.*

*Subscribed and sworn to before me on* _____ 10/30/06
                                                                                      Date

_____
Signature of Affiant

_____
Signature of Magistrate

BORGERSON0035