# EXHIBIT A

The October 14, 2002 University of California Policy on Reporting and Investigating Allegations of Suspected Improper Governmental Activities (the "Whistleblower Policy") has been superseded by a version dated April 2, 2008. The revised Whistleblower Policy is located at:

http://www.ucop.edu/ucophome/coordrev/policy/PP040208Policy.pdf.

April 2, 2008

### UNIVERSITY OF CALIFORNIA
### POLICY ON REPORTING AND INVESTIGATING ALLEGATIONS OF SUSPECTED IMPROPER GOVERNMENTAL ACTIVITIES
### (WHISTLEBLOWER POLICY)

I.  **Introduction**

The University of California has a responsibility for the stewardship of University resources and the public and private support that enables it to pursue its mission. The University is committed to compliance with the laws and regulations to which it is subject and to promulgating University policies and procedures to interpret and apply these laws and regulations in the University setting. Laws, regulations, policies and procedures strengthen and promote ethical practices and ethical treatment of the members of the University community and those who conduct business with the University.

The University's internal controls and operating procedures are intended to detect, prevent or deter improper activities. However, even the best systems of control cannot provide absolute safeguards against irregularities. Intentional and unintentional violations of laws, regulations, policies and procedures may occur and may constitute improper governmental activities as defined by statute (see "Definitions"). The University has a responsibility to investigate and report to appropriate parties allegations of suspected improper governmental activities and the actions taken by the University.

This policy governs reporting and investigation of allegations of suspected improper governmental activities, and together with the *Policy for Protection of Whistleblowers from Retaliation and Guidelines for Reviewing Retaliation Complaints*, represents the University's implementing policies for the *California Whistleblower Protection Act* (Government Code Section 8547 - 8547.12).

Employees and others are encouraged to use guidance provided by this policy for reporting all allegations of suspected improper governmental activities. While the scope of this policy is intended to be limited to the statutory definition of improper governmental activities, serious or substantial violations of University policy may constitute improper governmental activities determined upon review or investigation.

This policy does not fundamentally change the responsibility for conducting investigations but clarifies normal jurisdictional interests. Individual employee grievances and complaints regarding terms and conditions of employment will continue to be reviewed under the applicable academic and staff personnel policies or collective bargaining agreements. Any allegations of improper governmental activities that may result in subsequent actions bringing disciplinary charges against an academic or staff member shall be coordinated with the applicable

-2-

academic or staff personnel conduct and disciplinary policies. In all instances, the University retains the prerogative to determine when circumstances warrant an investigation and, in conformity with this policy and applicable laws and regulations, the appropriate investigative process to be employed.

## II. Definitions

### A. *University Resources*

For purposes of this policy, the term *University resources* is defined to include, but not be limited to the following, whether owned by or under the management of the University:

- Cash and other assets, whether tangible or intangible; real or personal property;
- Receivables and other rights or claims against third parties;
- Intellectual property rights;
- Effort of University personnel and of any non-University entity billing the University for its effort;
- Facilities and the rights to use of University facilities;
- The University's name; and
- University records, including student and patient records.

### B. *Improper Governmental Activities*

According to California Government Code Section 8547.2, *an improper governmental activity* is:

> any activity by a state agency or by an employee that is undertaken in the performance of the employee's official duties, whether or not that action is within the scope of his or her employment, and that (1) is in violation of any state or federal law or regulation, including, but not limited to, corruption, malfeasance, bribery, theft of government property, fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, or willful omission to perform duty, or (2) is economically wasteful, or involves gross misconduct, incompetency, or inefficiency.

### C. *Protected Disclosure*

According to California Government Code Section 8547.2, *a protected disclosure* is:

> any good faith communication that discloses or demonstrates an intention to disclose information that may evidence (1) an improper

governmental activity or (2) any condition that may significantly threaten the health or safety of employees or the public if the disclosure or intention to disclose was made for the purpose of remedying that condition.

D. *Illegal Order*

An *illegal order* is any directive to violate or assist in violating an applicable federal, state, or local law, rule or regulation or any order to work or cause others to work in conditions outside of their line of duty that would unreasonably threaten the health or safety of employees or the public.

E. *Whistleblower*

A person or entity making a protected disclosure is commonly referred to as a whistleblower. Whistleblowers may be University employees (academic or staff), applicants for employment, students, patients, vendors, contractors or the general public. The whistleblower's role is as a reporting party. They are not investigators or finders of fact, nor do they determine the appropriate corrective or remedial action that may be warranted.

F. *Locally Designated Official (LDO)*

The person designated by each campus, the Lawrence Berkeley National Laboratory, the Office of the President and the Division of Agriculture and Natural Resources as the official with primary responsibility to receive reports of allegations of suspected improper governmental activities.

III. **Reporting Allegations of Suspected Improper Governmental Activities**

A. **Filing a Report**

1. Any person may report allegations of suspected improper governmental activities. Knowledge or suspicion of improper governmental activities may originate from academic personnel, staff or administrators carrying out their assigned duties, internal or external auditors, law enforcement, regulatory agencies, and customers, patients, vendors, students or other third parties. Allegations of suspected improper governmental activities may also be reported anonymously.

2. Reports of allegations of suspected improper governmental activities are encouraged to be made in writing so as to assure a clear understanding of the issues raised, but may be made orally. Such reports should be factual rather than speculative or conclusory, and contain as much specific information as possible to allow for proper assessment of the nature, extent and urgency of preliminary investigative procedures.

3. The University recommends that any reports by persons who are not University employees be made to the LDO. Such reports may also be made to another University official whom the reporting person may reasonably expect to have either responsibility over the affected area or the authority to review the alleged improper governmental activity on behalf of the University.

4. Normally, a report by a University employee of allegations of a suspected improper governmental activity should be made to the reporting employee's immediate supervisor or other appropriate administrator or supervisor within the operating unit (such as the unit head), or to the LDO. However, in the interest of confidentiality, when there is a potential conflict of interest or for other reasons, such reports may be made to another University official whom the reporting employee may reasonably expect to have either responsibility over the affected area or the authority to review the alleged improper governmental activity on behalf of the University. When the alleged improper governmental activities involve the Chancellor, Laboratory Director, Vice President—Agriculture and Natural Resources, the LDO or the LDO's supervisor, such reports should be made to the Systemwide LDO with a copy to the Director of Investigations (DOI) and the Senior Vice President/Chief Compliance and Audit Officer of the Regents (SVP-CCAO) at the Office of the President. If the alleged improper governmental activities involve the Systemwide LDO or the President, the report should be made to the SVP-CCAO.

5. When a person reports allegations of suspected improper governmental activities to an appropriate authority the report is known as a *protected disclosure*. The rights of University employees and applicants for employment when making a protected disclosure are covered by the *Policy for Protection of Whistleblowers from Retaliation and Guidelines for Reviewing Retaliation Complaints*.

6. All University employees, and especially any academic or staff employee in a supervisory role, should be aware of and alert to either oral or written, formal or informal communications that may constitute a report of allegations of suspected improper governmental activity.

7. Under the *California Whistleblower Protection Act*, reports of allegations of suspected improper governmental activities may be made to the State Auditor. Under that law, the State Auditor is prohibited from disclosing the identity of a whistleblower unless he or she obtains the whistleblower's permission to do so, or when the disclosure is to a law enforcement agency that is conducting a criminal investigation.

-5-

**B.     Reporting to the LDO**

1. Each campus, the Lawrence Berkeley National Laboratory, the Office of the President and the Division of Agriculture and Natural Resources shall designate an official with primary responsibility to receive reports of allegations of suspected improper governmental activities (the LDO).

2. Managers, administrators and employees in supervisory roles who receive a report alleging suspected improper governmental activities shall ensure that the matter is promptly reported to their supervisor, an appropriate University manager and/or the LDO. Such employees are charged with exercising appropriate judgement in determining which matters can be reviewed under their authority and which matters must be referred to a higher level of management or the LDO. Consulting with supervisors, the LDO or other appropriate University management is encouraged and the exercise of judgement should err on the side of upward reporting. Oral reports should normally be documented by the supervisor by a written transcription of the oral report, and internal communications regarding allegations of improper governmental activities should normally be in writing.

3. Managers, administrators and employees in supervisory roles shall report to the LDO any allegations of suspected improper governmental activities—whether received as a protected disclosure, reported by their subordinates in the ordinary course of performing their duties, or discovered in the course of performing their own duties—when any of the following conditions are met:

   a) The matter is the result of a significant internal control or policy deficiency that is likely to exist at other units within the institution or across the University system;

   b) The matter is likely to receive media or other public attention;

   c) The matter involves the misuse of University resources or creates exposure to a liability in potentially significant amounts;

   d) The matter involves allegations or events that have a significant possibility of being the result of a criminal act (e.g., disappearance of cash);

   e) The matter involves a significant threat to the health and safety of employees and/or the public; or

   f) The matter is judged to be significant or sensitive for other reasons.

-6-

C. **Reporting to the Office of the President and Others**

1. The LDO shall have principal responsibility for meeting the reporting requirements to the Office of the President and local senior management. The LDO shall consult with members of the Investigations Workgroup (see Section IV.B.) as necessary in fulfilling this reporting responsibility and will inform the Investigations Workgroup of any reports made to the Systemwide LDO and DOI. The LDO (or designated member of the Local Investigations Workgroup – if there is a real or perceived potential conflict) shall forward a written report to the Systemwide LDO with copies to the DOI, the General Counsel and Vice President for Legal Affairs (General Counsel), and the SVP-CCAO regarding any reported allegations of suspected improper activities when any of the following conditions are met:

   a) The matter is the result of a significant internal control or policy deficiency that is likely to exist at other units within the institution or across the University system;

   b) The matter is likely to receive media or other public attention;

   c) The matter involves the misuse of University resources or creates exposure to a liability of at least $25,000;

   d) The matter involves a significant threat to the health and safety of employees and/or the public;

   e) The matter is judged to be significant or sensitive for other reasons;

   f) The matter alleges an improper activity by the Chancellor or Laboratory Director, the LDO, or the local Internal Audit Director.

2. A copy of communications sent to the Systemwide LDO shall be sent to the respective UC Police department if on the basis of the allegations it appears that a crime may have been committed. The UC Police shall be consulted to determine the appropriate action with regard to these investigations.

3. In some instances, even an allegation of improper governmental activity may be reportable to a funding entity or regulatory agency. More typically, at least preliminary investigation results are needed to assess reporting obligations to parties outside the University. The LDO, in consultation with the leadership of the affected area and the SVP-CCAO, will determine the nature and timing of such communications. Pursuant to Section III.C.1.b. above, the Systemwide LDO, the DOI and the SVP-CCAO shall be notified of any matter being reported to

      external agencies (other than matters routinely reported to the DOE pursuant to the Lawrence Berkeley National Laboratory contract).

4. Allegations of suspected losses of money, securities or other property shall be reported to the local risk management office as soon as discovered. The Chief Risk Officer, Office of the President shall be notified of such matters when they meet the criteria for reporting to the Systemwide LDO by copy of such notification. The Chief Risk Officer shall report such matters in accordance with the terms of any contracts with insurance or bonding companies.

5. In the event that any person with a reporting obligation under this policy believes that there is a conflict of interest on the part of the person to whom the allegations of suspected improper activities are to be reported, the next higher level of authority shall receive the report.

6. Whistleblowers frequently make their reports in confidence. To the extent possible within the limitations of law and policy and the need to conduct a competent investigation, confidentiality of whistleblowers will be maintained. Whistleblowers should be cautioned that their identity may become known for reasons outside of the control of the investigators or University administrators.

      Similarly, the identity of the subject(s) of the investigation will be maintained in confidence with the same limitations.

### IV. Investigating Alleged Improper Governmental Activities

    **A.**    A number of functional units within the University have responsibility for routinely conducting investigations of certain types of allegations of improper governmental activities, and have dedicated resources and expertise for such purposes. These include Compliance, Internal Audit, the UC Police, Human Resources and the Academic Personnel Office. In addition, other University parties may become involved in investigations of matters based on their areas of oversight responsibility or topical expertise, for example, environmental health and safety, risk management, research administration, academic affairs, health sciences compliance officers, conflict of interest coordinators, etc.

    **B.**    Each location (campus, the Lawrence Berkeley National Laboratory, the Office of the President, and the Division of Agriculture and Natural Resources) shall establish an Investigations Workgroup to ensure coordination and proper reporting of investigations. Acting in an advisory role, the Workgroup shall assist the LDO in assessing the location's planned course of action related to allegations and investigations, including determining that an adequate basis exists for commencing an investigation.

-8-

    **C.**    The LDO will chair the Investigations Workgroup. Workgroup membership should include representatives from each functional unit that has routine responsibility for certain types of investigations (e.g., Compliance, Internal Audit, UC Police, Human Resources, Risk Management, Office of the General Counsel and the Academic Personnel Office). Additional representation to be determined locally may include research administration, academic affairs, campus controllers, compliance officers, campus/laboratory counsel and representatives from any other area in which investigations routinely occur but are not conducted by a standing body (for example, parties responsible for investigating allegations of scientific misconduct). In addition, specialized expertise may be required on an ad hoc basis for investigation of certain matters.

    **D.**    The Investigations Workgroup's responsibilities shall include:

        1. Assisting the LDO in assuring that the proper investigative channels are utilized according to appropriate expertise and jurisdiction

        2. Assuring that all appropriate administrative and senior officials are apprised of the allegations as necessary;

        3. Assuring appropriate reporting occurs to the Office of the President through a written communication to the Systemwide LDO, the DOI and the SVP-CCAO to funding and regulatory agencies, whistleblowers and others as necessary or provided by this policy;

        4. Assisting the LDO in ensuring appropriate resources and expertise are brought to bear to cause the timely and thorough review of reports of allegations of suspected improper governmental activities;

        5. Ensuring that there are no conflicts of interest on the part of any party involved in specific investigations;

        6. Coordinating and facilitating communications across investigative channels as necessary to ensure comprehensive attention to all facets of the matter;

        7. Assisting the LDO in monitoring significant elements and progress of investigations to ensure that allegations are timely and thoroughly addressed; and

        8. Coordinating and facilitating in an advisory capacity the corrective and remedial action that may be initiated in accordance with applicable faculty or staff conduct and disciplinary procedures.

E.  Each unit with investigative authority shall carry out investigative activities in accordance with appropriate laws and established procedures within its discipline (e.g., UC Police, Human Resources, Academic Personnel, Compliance, Internal Audit, etc.), and regulatory policies and guidelines (e.g., scientific misconduct per Office of Science and Technology Policy (OSTP) rules).

F.  The purpose and authority of the Investigations Workgroup shall not be construed as to limit or halt investigations undertaken with proper authority granted by law or policy to any University investigative authority. Nor is the Workgroup empowered to initiate investigations without an adequate basis. Rather, the Workgroup's purpose is to provide guidance, advice and/or coordination for investigative activities as requested by the LDO and to facilitate communications among appropriate parties as requested by the LDO.

G.  All employees of the University have a duty to cooperate with investigations initiated under this policy.

H.  Consistent with applicable personnel policies or collective bargaining agreements, an employee may be placed on an administrative leave or an investigatory leave, as appropriate, when it is determined by the University that such a leave would serve the best interests of the employee, the University or both. Such a leave is not to be interpreted as an accusation or a conclusion of guilt or innocence of any individual including the person on leave. The appropriate Academic Personnel or Human Resources Office shall be consulted regarding any plan to place an employee on such a leave.

V.  **Responsibilities**

   A.  **Office of the President**

   1. The Systemwide LDO assisted by the DOI and the Office of Compliance and Audit shall have overall responsibility for implementation of this policy.

   2. For the Office of the President, the Systemwide LDO will have the same responsibilities assigned to Chancellors under this policy.

   3. The President, based on advice and consultation with the Systemwide LDO, the Provost and Executive Vice President—Academic Affairs, the General Counsel, and the SVP-CCAO will communicate with The Regents regarding alleged improper governmental activities and investigative results on matters of significance.

-10-

    4. Through the publication of administrative guidelines, the Systemwide LDO assisted by the DOI shall provide guidance to campuses and the Lawrence Berkeley National Laboratory on the creation of local implementing procedures. Campus process and structure will be defined in local implementing procedures for the University's Whistleblower Policy. These local procedures must contain a statement in the introduction, purpose or background section to identify the University's Whistleblower Policy as the controlling policy document which supersedes any other local or System policy related to this matter. This statement should be worded as for example: "Nothing contained in these local implementing procedures should be read or interpreted to contradict the underlying University of California Whistleblower Policy." Each location should submit to the Systemwide LDO, the DOI, and the SVP-CCAO for review and approval that location's implementing procedures, including the nomination of the LDO.

**B.    Chancellor**

    1. The Chancellor shall be responsible for implementing this policy at the local level. Authorities and responsibilities delegated to the Chancellor are also assumed by the Lawrence Berkeley National Laboratory Director, the Systemwide LDO and the Vice President—Agriculture and Natural Resources in their respective jurisdictions.

    2. The Chancellor shall appoint (with the approval of the Systemwide LDO) the local LDO responsible for carrying out this policy. This individual will chair the Investigations Workgroup established under Section IV. B. above. The LDO should be at the level of Associate Vice Chancellor or higher.

    3. The Chancellor shall appoint the standing members of the Investigations Workgroup. The LDO may appoint additional regular members and ad hoc members as necessary to address particular issues.

**C.    Locally Designated Official (LDO)**

    1. The LDO shall be responsible for the establishment and maintenance of local implementing procedures that comply with this policy and the associated administrative guidelines. The local implementing procedures may in certain regards such as reporting thresholds be more stringent than this policy, but they may not be any less stringent.

    2. The LDO shall oversee the establishment of mechanisms to ensure compliance with the reporting requirements of this policy. Principal among these are the local channels for assuring that reports of allegations of suspected improper governmental activities—which may

-11-

be orally and/or informally communicated to numerous administrators and academic and staff employees in supervisory roles—are brought to the attention of the LDO or a member of the Investigations Workgroup.

3. The LDO is responsible for determining the need for consultation with the Investigations Work Group, select Workgroup members or other subject matter experts when initiating an investigation. The LDO shall convene the Workgroup on a scheduled basis and on an ad hoc basis as necessary to assist in promptly addressing allegations, and shall keep the Workgroup and the DOI apprised of the progress and status of investigations, as appropriate. Procedures guiding the initiation of investigations should not impede prompt action by the LDO or investigators when warranted.

**D.    Investigative Responsibilities**

1. The LDO assisted by the Investigations Workgroup has responsibility for ensuring that independent, unbiased and competent investigative resources are used to conduct investigations of suspected improper governmental activity. In assigning the lead investigator role, the LDO should take into consideration the specific expertise and availability of dedicated investigation resources possessed by functional units such as Compliance, Internal Audit, Human Resources, etc. If criminal activity is detected, consultation with UC Police will determine if the police should take the lead, participate, or initiate a separate investigation.

2. UC Police are responsible for investigations of known or suspected criminal acts within their jurisdiction. In cases involving principally criminal concerns, the UC Police should be the lead investigators and others with an investigative interest should work in support of the police investigation.

3. Procedures for investigations of personnel matters, scientific misconduct, regulatory non-compliance, student misconduct and other matters are established locally by each campus, the Lawrence Berkeley National Laboratory, the Office of the President or the Division of Agriculture and Natural Resources. Such procedures shall be consistent with this policy and applicable laws and regulations.

4. In cases involving overlapping interests among investigative bodies, assistance and cooperation will be provided between the investigators based on the relative expertise of the investigative bodies.

-12-

## VI. Roles, Rights and Responsibilities of Whistleblowers, Investigation Participants, Subjects and Investigators

### A. Whistleblowers

1. Whistleblowers provide initial information related to a reasonable belief that an improper governmental activity has occurred. The motivation of a whistleblower is irrelevant to the consideration of the validity of the allegations. However, the intentional filing of a false report, whether orally or in writing is itself considered an improper governmental activity which the University has the right to act upon.

2. Whistleblowers shall refrain from obtaining evidence for which they do not have a right of access. Such improper access may itself be considered an improper governmental activity.

3. Whistleblowers have a responsibility to be candid with the LDO, investigators or others to whom they make a report of alleged improper governmental activities and shall set forth all known information regarding any reported allegations. Persons making a report of alleged improper governmental activities should be prepared to be interviewed by University investigators.

4. Anonymous whistleblowers must provide sufficient corroborating evidence to justify the commencement of an investigation. An investigation of unspecified wrongdoing or broad allegations will not be undertaken without verifiable evidentiary support. Because investigators are unable to interview anonymous whistleblowers, it may be more difficult to evaluate the credibility of the allegations and therefore, less likely to cause an investigation to be initiated.

5. Whistleblowers are "reporting parties," not investigators. They are not to act on their own in conducting any investigative activities, nor do they have a right to participate in any investigative activities other than as requested by investigators.

6. Protection of a whistleblower's identity will be maintained to the extent possible within the legitimate needs of law and the investigation. Should the whistleblower self-disclose his or her identity, the University will no longer be obligated to maintain such confidence.

7. A whistleblower's right to protection from retaliation does not extend immunity for any complicity in the matters that are the subject of the allegations or an ensuing investigation.

-13-

8. Whistleblowers have a right to be informed of the disposition of their disclosure absent overriding legal or public interest reasons.

B. **Investigation Participants**

1. University employees who are interviewed, asked to provide information or otherwise participate in an investigation have a duty to fully cooperate with University-authorized investigators.

2. Participants should refrain from discussing or disclosing the investigation or their testimony with anyone not connected to the investigation. In no case should the participant discuss with the investigation subject the nature of evidence requested or provided or testimony given to investigators unless agreed to by the investigator.

3. Requests for confidentiality by participants will be honored to the extent possible within the legitimate needs of law and the investigation.

4. Participants are entitled to protection from retaliation for having participated in an investigation.

C. **Investigation Subjects**

1. A subject is a person who is the focus of investigative fact finding either by virtue of an allegation made or evidence gathered during the course of an investigation. The decision to conduct an investigation is not an accusation; it is to be treated as a neutral fact finding process. The outcome of the investigation may or may not support a conclusion that an improper governmental act was committed and, if so, by whom.

2. The identity of a subject should be maintained in confidence to the extent possible given the legitimate needs of law and the investigation.

3. Subjects should normally be informed of the allegations at the outset of a formal investigation and have opportunities for input during the investigation.

4. Subjects have a duty to cooperate with investigators to the extent that their cooperation will not compromise self-incrimination protections under state or federal law.

5. Subjects have a right to consult with a person or persons of their choice. This may involve representation, including legal representation.

6. Subjects may consult with the Office of the General Counsel (including campus and National Laboratory counsel) concerning the investigation.

-14-

> The Office of the General Counsel will provide legal advice to the subject regarding issues in the investigation, unless the Office of the General Counsel determines that a divergence of interest prevents it from doing so, it being understood that at all times the Office of the General Counsel represents the interests of the University. If legal services are provided by the Office of the General Counsel to the subject, the attorney-client privilege may not be invoked by the subject to prevent disclosure to the University of information obtained by the attorney providing the services, and the subject will be advised whenever it appears that a divergence of interest may require the attorney to withdraw from providing such legal services to the subject.
>
> Subjects are free at any time to retain their own counsel to represent them with regard to the investigation and may request that the University pay or reimburse the attorney's fees. Chancellors shall designate a person to receive the request for reimbursement. Such requests shall be considered consistent with statutory law, case law and University practice, but this policy creates no entitlement to such payments or reimbursements.

7. Subjects have a responsibility not to interfere with the investigation and to adhere to admonitions from investigators in this regard. Evidence shall not be withheld, destroyed or tampered with, and witnesses shall not be influenced, coached or intimidated.

8. Unless there are compelling reasons to the contrary, subjects should be given the opportunity to respond to material points of evidence contained in an investigation report.

9. No allegation of wrongdoing against a subject shall be considered sustained unless at a minimum, a preponderance of the evidence supports the allegation.

10. Subjects have a right to be informed of the outcome of the investigation. If allegations are not sustained, the subject should be consulted as to whether public disclosure of the investigation results would be in the best interest of the University and the subject.

11. Any disciplinary or corrective action initiated against the subject as a result of an investigation pursuant to this policy shall adhere to the applicable academic personnel or staff conduct and disciplinary procedures.

-15-

D. **Investigators**

1. Investigators are those persons authorized by the University to conduct fact finding and analysis related to cases of alleged improper governmental activities.

2. Investigators derive their authority and access rights from University policy or Regental authority when acting within the course and scope of their responsibilities.

3. The University, investigation participants and subjects should be assured that investigators have competency in the area under investigation. Technical and other resources may be drawn upon as necessary to augment the investigation.

4. All investigators shall be independent and unbiased both in fact and appearance.

5. Investigators have a duty of fairness, objectivity, thoroughness, ethical behavior, and observance of legal and professional standards.

6. Investigations should be launched only after preliminary consideration that establishes that:

    a. The allegation, if true, constitutes an improper governmental activity,[1] and either:

    b. The allegation is accompanied by information specific enough to be investigated, or

    c. The allegation has or directly points to corroborating evidence that can be pursued. Such evidence may be testamentary or documentary.

VII. **Additional Required Communications**

A. If an investigation leads University officials to conclude that a crime has probably been committed, the results of the investigation shall be reported to the District Attorney or other appropriate law enforcement agency. The UC Police should be the conduit for communications with law enforcement agencies unless the Investigations Workgroup in a particular situation determines a different communications strategy.

---

[1] Matters that do not meet this standard may be worthy of management review, but should not be undertaken as an investigation of an improper governmental activity.

-16-

- **B.** If an investigation leads University officials to conclude that a faculty member has engaged in conduct that may be a violation of the Faculty Code of Conduct, the results of the investigation shall be reported to appropriate academic personnel governing bodies in accordance with the applicable procedures for faculty conduct and the administration of discipline. Any charges of faculty misconduct brought as a result of an investigation under this policy shall comply with established faculty conduct procedures.

- **C.** Consultation with the Office of the General Counsel is required before negotiating or entering into any restitution agreement resulting from the findings of an investigation.