JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

MERRY JEAN CHAN (CASBN 229254)
DENISE MARIE BARTON (MABN 634052)
Assistant United States Attorneys

    450 Golden Gate Avenue, 11th Fl.
    San Francisco, CA 94102
    Telephone: (415) 436-6750
    Facsimile: (415) 436-6470
    Email: merry.chan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ERIC MICHAEL BORGERSON, ) <br> ) <br> Defendant. ) <br> _____ ) | No. CR 07-0472 CW <br><br> DECLARATION OF HADIDJAH RIVERA |

I, Hadijah Rivera, hereby declare as follows:

    1.    I am the Management Services Officer ("MSO") for the University of California, Berkeley, Institute for Research on Labor and Employment ("IRLE"), formerly the Institute for Industrial Relations ("IIR"), located at 2521 Channing Way in Berkeley, California. I report only to the director of the IIR, Michael Reich. I have been in this position since July 2005. I have been an MSO for seventeen years, and I have worked for the University of California for twenty years. As part of my administrative responsibilities, I supervise Robert Hiramoto, the IRLE's IT Manager. I, however, have no personal expertise about computers and network systems.

2.  Hiramoto began working as the IRLE's IT Manager in 2005, just after a serious computer network security incident concerning the theft by hackers of sensitive personal data covered by California Senate Bill 1386. Our entire Institute was shut down by the FBI for investigation of this theft. As a result of this incident, network security became a priority for the IRLE.

3.  I first learned of Hiramoto's investigation into a possible network security breach concerning IRLE employee Eric Borgerson on Sunday, October 29, 2006. On that same day, I learned that Borgerson's work computer, which was University property, had been seized by the University of California Police Department. On Monday, October 30, 2006, police arrested Borgerson.

4.  I notified the Human Resources Employee Relations and Academic Personnel departments of these matters, who also contacted University counsel at the Office of the President. Employee Relations would determine whether Hiramoto had complied with University policy in examining Borgerson's computer. Academic Personnel would deal with Borgerson's employment status with the University in light of his arrest.

5.  Academic Personnel was the appropriate department to contact about Borgerson's employment status because he was hired as a specialist, non-Senate academic. This is a special designation at the University. Borgerson was not technically staff, not a full academic with voting rights, not a faculty member, and not a student. I was not involved in the hiring of Borgerson. Carol Vendrillo, the chair of the California Public Employee Relations program of the IRLE, hired Borgerson. He was hired for a term of one year under an exception to hire format.

6.  Borgerson was placed on investigatory leave with pay status while I worked with Academic Personnel and University counsel to conduct an internal investigation into whether Borgerson had improperly used University property. Normally, Vendrillo, who was Borgerson's direct supervisor, would have taken a lead role in the investigation. However, this was not possible because Vendrillo's domestic partner was Borgerson's legal counsel at that time, and Vendrillo was reluctant to limit her contact with Borgerson because they were friends. We tried to interview Borgerson for the investigation, but he refused to answer most of questions and handed us two-page

1 document indicating his position that his privacy had been violated.

2     7. The conclusion of the investigation was delayed at Borgerson and his counsel's request. They indicated that they were going to trial soon and did not want our investigation results to impact his criminal proceeding. We reached the limit of our accommodation in the spring of 2007. At that time, I submitted my investigation report to my director, Michael Reich. He approved it and submitted it to Robert Price, the Associate Vice Chancellor for Research, with a recommendation that Borgerson be terminated from his employment based on his improper use of University equipment. Price agreed.

    8. Around April 2007. Borgerson was notified of the University's decision. Before a letter of termination was sent to him, Borgerson and the University negotiated a resignation agreement. As a result of his resignation, the report regarding the University's internal investigation of his conduct was not included in his personnel file. I was asked to destroy my copy of records pertaining to the investigation and did so. I do not know if any copies of these documents remain in existence. As a result of the resignation agreement, Borgerson agreed not to take any action against the University or any University employee. If he had not resigned and had received a termination letter, he would have had a period of time within which to respond and contest the bases his termination.

    9. With respect to investigating the propriety of Hiramoto's actions, I contacted the Systems and Network Security Group the week of October 30, 2006. They told me that they did not believe Hiramoto had violated any policy. I believe someone sent me an email to that effect. Human Resources told me to contact campus Electronic Communications Policy Coordinator, Karen Eft, and I also contacted Eft the week of October 30, 2006. Eft said that based on what she knew, she did not believe that Hiramoto had violated policy. If these individuals had suggested that Hiramoto had violated policy, he would have been placed on administrative leave for investigation, as Borgerson had been.

    10. I wanted to get something official in writing regarding the propriety of Hiramoto's actions on October 28, 2006, with respect to Borgerson's computer, so I worked with Hiramoto and Reich to prepare a request for post-authorization for access without consent. I was not sure whether

3

1  this was the appropriate vehicle, since my understanding is that the access without consent form is
2  generally used for authorization to access emails. However, the requested post-authorization was
3  granted by Vice Chancellor of Research Beth Burnside.

4  11.  I know that Borgerson was assigned to office 210 and was issued only a key to that
5  office. I know that the lock on office 217 can be set to lock automatically. It can also be set not to
6  lock. Katherine Thomson occupied office 217. In October 2006, she shared it with an intern named
7  Jamie Calloway. I believe that both were absent from the office on October 27, 2006.

8  12.  I understand this declaration is being submitted in connection with Borgerson's
9  motion to suppress; accordingly, this declaration is limited to some facts concerning this motion.

11  I declare under penalty of perjury that the foregoing statements are true and correct to the best
12  of my knowledge and belief.

14  Dated: May 7, 2008

    /HADIDJAH RIVERA/

4