JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

MERRY JEAN CHAN (CASBN 229254)
DENISE MARIE BARTON (MABN 634052)
Assistant United States Attorneys

450 Golden Gate Avenue, 11th Fl.
San Francisco, CA 94102
Telephone: (415) 436-6750
Facsimile: (415) 436-6470
Email: merry.chan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-0472 CW |
| Plaintiff, | |
| v. | DECLARATION OF KAREN E. EFT |
| ERIC MICHAEL BORGERSON, | |
| Defendant. | |

I, Karen E. Eft, hereby declare as follows:

1.   I am the Information Technology ("IT") Policy Manager for the University of California's Berkeley campus. I have been in this position since August 2004. Prior to this, from February 1, 1996 to August 13, 2004, I was an IT Policy Analyst, and assistant to the IT Policy Manager. I was involved in drafting the University's Electronic Communications Policy ("ECP"), as well as in revising it. The ECP was originally issued in 2000, and a revised version was issued in 2005. I am also very familiar with the ECP because one of my duties is to coordinate the policy. I am the sole ECP coordinator for the Berkeley campus of the University of California, and am the

1

1  point of contact for questions about ECP compliance.

2. On October 29, 2006, a staff member of the Systems and Network Security Group central network security called to notify me that Robert Hiramoto, the IT Manager for U.C. Berkeley's Institute for Industrial Relations ("IIR"), located at 2521 Channing Way, had monitored and investigated the work computer of an employee named Eric Borgerson. I then spoke with Hiramoto about the incident over the phone.

3. Based on everything that I know about the incident concerning Borgerson's work computer, I have concluded that Hiramoto's actions were in compliance with all relevant University IT policies.

4. In the course of reviewing a bandwidth usage report, Hiramoto became concerned that the security of Borgerson's computer and the University's network resources might have been compromised. The report showed that high amounts of data were being transmitted through a file-sharing program, not typically used in the unit Borgerson worked. Hiramoto's review of the bandwidth report was authorized under the ECP. Section IV.C.2.b. of the ECP states: "University employees who operate and support electronic communications resources regularly monitor transmissions for the purpose of ensuring reliability and security of University electronic communications resources and services . . . ."

5. Hiramoto subsequently remotely accessed Borgerson's computer to check whether the computer was in fact compromised. This further investigation is authorized by the ECP. Section IV.C.2.b. explains that University employees generally may not intentionally seek out electronic transactional information or contents, but only "when not germane to system operations and support." In other words, personnel may access transactional information or the contents of a computer when pursuant to system operations and support. Hiramoto's viewing of Borgerson's desktop, programs, recent documents, and file-sharing programs were all in service of his investigation of whether Borgerson's computer and the University's network resources had been misappropriated by a hacker or virus. Hiramoto's actions were germane to systems operations and support. I believe that his actions were limited to the least invasive degree of inspection required to perform his duties responsibly.

6.    I understand that Hiramoto discovered evidence of child pornography on Borgerson's computer in the course of performing his systems security duties, that he reported his finding to Jake Harwood of System and Network Security, who contacted the University of California Police Department. Hiramoto's disclosure of what he observed on Borgerson's computer is in compliance with the ECP. He inadvertently discovered the evidence of child pornography, which is an improper governmental activity subject to reporting under the University's Policy on Reporting and Investigating Allegations of Suspected Improper Governmental Activities under Section IV.C.2.b of the ECP.

7.    I do not believe that Hiramoto's actions qualified as "access without consent," which is addressed in Section IV.B of the ECP. "Access without consent" in the ECP is a term of art, and refers to examining or disclosing a holder's electronic communications records for purposes of investigating improper conduct without first notifying the holder, and may be done only in very limited circumstances. It does not refer to examining a holder's electronic communication records for network security and operational purposes.

8.    However, even if Hiramoto's actions were within the scope of what the ECP refers to as "access without consent," they were justified under the ECP. Section IV.B.1 of the ECP states that "access without consent" generally must be authorized in advance by top University officials. However, advance authorization is unnecessary in emergency circumstances, where there is a high probability that delaying action would almost certainly result in circumstances in which failure to act might result in loss of significant evidence of one or more violations of law. Examination of the contents of electronic communications records under emergency circumstances should be limited to the "least perusal of contents and the least action necessary to resolve the emergency." Hiramoto's examination of Borgerson's computer was prompted by anomalies in the bandwidth usage report which suggested that Borgerson's computer and perhaps the entire network to which Borgerson's computer was connected had been infiltrated by a hacker. Waiting to obtain authorization to investigate this concern could have jeopardized University computing resources and sensitive information that it contained. Because the IIR building had suffered a serious network security breach in 2004, just around the time of Hiramoto's arrival, it would have been particularly

imprudent for Hiramoto to wait to investigate. This constituted an emergency circumstance. Hiramoto's actions to ascertain whether the computer or network had been compromised were appropriate and no more than necessary to resolve the emergency.

9. In late October 2006, Joyce Harlan of the Human Resources department, Labor Relations section, contacted me in reference to Hiramoto's examination of Borgerson's work computer. She asked me where she could find the form for a request for access without consent. I directed her to what I believed to be the relevant IT policies and a web page with the request form.

10. In January 2007, I received a request for post-authorization for access without consent due to emergency circumstances requiring immediate access for Hiramoto's examination of Borgerson's computer. The request was signed by Michael Reich, director of the IIR, which employed both Borgerson and Hiramoto. The request explained that Hiramoto had investigated Borgerson's work computer "as the result of a bandwidth report" in which "he saw a large amount of data being transferred to and from high numbered, unallocated ports." The request further explained that "[t]hese types of transfers can be indicative of system compromise and have been the basis of more than 120 security investigations on campus." The request stated that Hiramoto's investigation was prudent and fell under the "Time-dependant, Critical Operational Circumstance provisions of the Access Without Consent section to the Electronic Communications Policy" because "if the system had indeed been compromised, any data it contained would be suspect," and "a compromised system can be used as a spring board into other systems." The request further stated that Hiramoto's disclosure of his findings to the Systems and Network Security group and the U.C. Police Department was justified under the ECP because the need to preserve evidence constituted Compelling Circumstances.

11. I submitted this request to Beth Burnside, the Vice Chancellor of Research. Vice Chancellor Burnside reviewed the request and signed her approval on January 10, 2007. The request and approval are attached to my declaration as Exhibit A.

12. On February 12, 2007, I met with Hiramoto's supervisor, Hadidjah Rivera, to review portions of the University's IT policies relevant to the incident concerning Borgerson's work computer. The meeting was at Rivera's request. I explained to her that I did not believe that

1. Hiramoto's actions had violated any University policy.

13. In order to create a CalMail account, an employee must read and agree to abide by the University's Computer Use Policy, Electronic Communications Policy, and CalMail policies. An employee must physically type in the word "Yes" to indicate his agreement. I have verified from University records that Borgerson made this agreement on January 26, 2006.

14. I understand this declaration is being submitted in connection with Borgerson's motion to suppress; accordingly, this declaration is limited to some facts concerning this motion.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: May 6, 2008

*Karen E. Eft*
KAREN E. EFT