BARRY J. PORTMAN
Federal Public Defender
ANGELA M. HANSEN
Assistant Federal Public Defender
555 12th Street, Suite 650
Oakland, CA  94607
Telephone:  (510) 637-3500

Counsel for ERIC BORGERSON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-07-0472-CW |
| | ) | |
| Plaintiff, | ) | SUPPLEMENTAL DECLARATION OF |
| | ) | JEFF MICHAEL FISCHBACH FILED IN |
| vs. | ) | SUPPORT OF DEFENDANT'S MOTION |
| | ) | TO SUPPRESS |
| ERIC MICHAEL BORGERSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

I, Jeff Michael Fischbach, hereby declare:

1. My name is Jeff Michael Fischbach, and I am Board Certified Forensic Examiner specializing in information, communication, stored data and electronic location technologies (ABFE #12891).  I previously submitted a declaration in connection with the motion to suppress that was filed on behalf of Mr. Borgerson.  I submit this supplemental declaration to respond to a few of the claims made by the government in its opposition to the motion to suppress.

2. In addition to the technical experience listed in my original declaration, I also have background in drafting and editing communication policies.  For a number of years, and as far back as 1994, I consulted with lawyers, accountants and others to draft electronic corporate communication policies.  As a result, I am very familiar with these types of privacy policies.  I

Supplemental Declaration of Jeff Michael
Fischbach                                                                    1

1  reviewed the University of California, Berkeley privacy policies at issue in this case and it is my
2  opinion that the University policies are fairly protective of a user's privacy and seem to give
3  more rights to individual users than to the University.
4  3.    I have reviewed the attached document entitled "Departmental Bandwidth Usage
5  Reports," which appears to be a tutorial of sorts for the Berkeley departmental bandwidth reports
6  prepared for departmental systems administrators like Robert Hiramoto. This document provides
7  examples of what would appear on a bandwidth report if a user were file-sharing, and what the
8  report would like if the system were compromised by a hacker. (*See* attached tutorial, at page 2).
9  The bandwidth in the file-sharing (kazaa) example (2504M, or megabytes, and 1246M) is
10 significantly greater than the bandwidth that was reported as suspicious in this case (56.6M).
11 Moreover, the section of the document given as an example of a hacking incident looks nothing
12 like the bandwidth report in this case. (*Compare* attached tutorial, at page 2, *with* the October
13 27, 2006, bandwidth report attached to my original declaration, Bates 216).
14 4.    I have reviewed the declaration of Robert Hiramoto submitted with the government's
15 opposition to the motion. In it, Hiramoto claims that the "second highest data user" on the
16 October 27, 2006 bandwidth report "caught [his] eye" because it "received a large amount of
17 data" (56.6M) through the gnutella port. *See* Robert Hiramoto Declaration [Hiramoto Decl.] ¶
18 11. What is interesting about this observation is that the "large amount of data" Hiramoto found
19 to be abnormal does not come close to the University's own example for a high-usage pattern
20 given in its tutorial (2504M and 1246M). *See* attached tutorial, page 2.
21 5.    In Hiramoto's declaration, he further claims that his primary concern in searching
22 Mr. Borgerson's files was to "ensure that protected data was not being shared out." Hiramoto
23 Decl. ¶ 12. But the bandwidth report itself should have provided Hiramoto with this assurance.
24 The *incoming* traffic for the "gtela" port is listed under the "I-O" column on the report. The
25 amount of data received through this port (56.6M, or megabytes) was twenty-eight times greater
26 than the *outgoing* traffic documented in the "O-O" column on the report (2010K, or kilobytes).

Supplemental Declaration of Jeff Michael
Fischbach                                              2

1  This indicates that more data was being downloaded–not uploaded–through the file-sharing port.

2  6.     In Hiramoto's declaration, he says that while he knew that the user was sophisticated
3  enough to install his own software–and had permission to do so–he was still concerned that "file-
4  sharing had been inadvertently triggered by a virus or some malicious program." Hiramoto Decl.
5  ¶ 16. File-sharing poses a risk that a shared file may have a virus and infect a system. But the
6  risk is no greater than the risk associated with email. It would be illogical for a hacker or a virus
7  to surreptitiously install file-sharing software for the purposes of downloading files *to* a user's
8  machine, as Hiramoto claims. To the contrary, virus and hacking concerns typically surround the
9  theft of data. It's the equivalent of a pickpocket putting money into a victim's wallet. It's
10 possible, but not likely to happen. Hiramoto cites to an example, Joke.exe, which he says is "a
11 self-executing virus, and which Borgerson might have received as an attachment to an email."
12 *Id.* ¶ 16. But Joke.exe is an email-related virus that doesn't appear to have anything to do with
13 file-sharing.

14 7.     Hiramoto suggests that this clever virus may have entered through the user's email to
15 trigger the file-sharing program. *Id.* But if Hiramoto were truly concerned that the user might
16 have received a virus through an email attachment, the best measure he could have taken was to
17 log onto the email server to check for a virus. As I explained in my original declaration, simply
18 looking at the user's machine will not tell you if the machine is infected with a virus, as viruses
19 run covertly.

20 8.     That the high-bandwidth usage Hiramoto says he was concerned about was through a
21 file-sharing port ("gtela") has no bearing on the likelihood that there would be viruses or hacking.
22 All this suggests is that the user is downloading large media files.

23 9.     It is my understanding that the government has argued that Hiramoto needed remote
24 access to user's files for purposes of routine maintenance. While routine maintenance may
25 require a systems administrator to occasionally log onto a user's machine, it can usually be
26 accomplished without logging into the user's personal desktop, and it would not normally entail

Supplemental Declaration of Jeff Michael
Fischbach                                          3

1  opening programs and searching directories and sub-directories, private or otherwise.

2  I declare under penalty of perjury that the foregoing is true and correct, except for
3  those matters stated on information and belief, and as to those matters, I am informed and believe
4  them to be true.

5  Executed this 12 day of May, 2008, in the Central District of California.

_____
JEFF MICHAEL FISCHBACH
Forensic Technologist

Supplemental Declaration of Jeff Michael
Fischbach                                                    4